IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 4:20-00328-CV-RK |
| v. | )<br>) |
| AQUEOUS VAPOR, LLC, ADAM WILLIAMS, | )<br>)<br>) |
| Defendants. | ) |

## ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Plaintiff Scottsdale Insurance Company's ("Scottsdale") and Defendant Adam Williams' ("Williams") cross motions for summary judgment. (Docs. 12 and 14.) The motions are fully briefed. (Docs. 13, 15, 18, 21, 22.) After careful consideration and for the reasons set forth below, Scottdale's motion is **GRANTED** and Williams' motion is **DENIED**.

### Background[1]

This suit concerns whether an insurance policy issued by Scottsdale to Aqueous Vapor LLC[2] ("Aqueous Vapor") covers injuries suffered by Williams. Williams filed suit in the Circuit Court of Jackson County, Missouri, alleging he was injured when a battery he purchased from Aqueous Vapor's Noland Road, Independence, Missouri, location exploded in his pocket. When the battery exploded, Williams was away from the premises of the Noland Road location.

Scottsdale issued Aqueous Vapor an insurance policy (the "Policy"), which contained a Commercial General Liability part and a Commercial Property Coverage part. The Policy was in effect at the time of the accident giving rise to Williams' alleged injuries. The Policy provides commercial general liability coverage to Aqueous Vapor and any "insured" for "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" during the policy period. The Policy designates the coverage territory by the schedule of locations, which lists all the insured stores including the subject premises at 3709 S. Noland Road, Independence, Missouri 64055. The "Business Description" set forth in the Policy's Common Declarations was "ELECTRONIC

---

[1] The following facts are taken from the parties' briefs and have been admitted as uncontroverted. Language quoted from the Policy is taken from the Policy itself. (Doc. 15-3.)

[2] Defendant Aqueous Vapor has not filed briefing with respect to the current motions.

CIGARETTE STORE." At the time the Policy was issued, Scottsdale was aware Aqueous Vapor was in the business of selling electronic cigarettes, as well as supplies or products that might be used with electronic cigarettes.

The Policy has several exclusions. One of the exclusions is an endorsement titled EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD ("products-completed exclusion") which states: "This insurance does not apply to 'bodily injury' . . . included within the 'products-completed operations hazard.'" The Policy defines "Products-completed operations hazard" to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" The Policy defines "your product" as:

> (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
> > (a) You;
> >
> > (b) Others trading under your name; or
> >
> > (c) A person or organization whose business or assets you have acquired; and
>
> (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

The Policy further states "your product" includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> (2) The providing of or failure to provide warnings or instructions.

The Policy also contains an endorsement entitled TOTAL PRODUCTS EXCLUSION WITH DESIGNATED PREMISES LIMITATION, which states:

> This policy does not apply to and there is no duty to defend a "suit" alleging any "bodily injury", "property damage", or "personal and advertising injury":
>
> 1. Occurring on any premises other than the designated premises shown in the Schedule above.
>
> 2. Occurring away from the designated premises if caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule above.

2

3. Arising out of, resulting from, or in any way attributable to:

   a. Anything encompassed within the "products-completed operations hazard" including, but not limited to, aircraft parts; railroad or railroad car parts; automobile parts; farm machinery parts; pharmaceutical products; medical, dental, hospital or surgical parts; chemical manufacturing; tobacco products; firearms and ammunition.

   b. Goods or products designed, tested, manufactured, assembled, blended, packaged or repackaged at, or sold or distributed from the designated premises.

   c. Any and all professional services arising out of the operations performed at the designated premises, including, but not limited to, researching, developing, testing anything encompassed within the "products-completed operations hazard" as identified in paragraph a. above; including preparing or approving, or failing to prepare or approve, any goods or products designed, tested, manufactured, blended, packaged or repackaged at, or sold or distributed from, the designated premises.

   d. Anything described in a. through c. for which the insured has assumed liability in a contract or agreement.

The Policy additionally contains an endorsement which is titled TOBACCO OR NICOTINE PRODUCTS HEALTH HAZARD EXCLUSION. The endorsement states, in part, as follows: "With respect to any operations shown in the Schedule above, this insurance does not apply to 'bodily injury' . . . arising out of the consumption or use of any 'tobacco or nicotine product.'" According to the Policy,

> "Tobacco or nicotine product" includes, but is not limited to raw or cured tobacco, cigars, cigar wrappers, pipe tobacco, cigarette filters, snuff, chewing tobacco, smokeless tobacco products, vapors, cigarettes and cigarette paper; tobacco smoke, gaseous or solid residues or by-products of tobacco or nicotine use or consumption; or any chemical, mineral or other product sprayed on, applied to or customarily found within or used in conjunction with any tobacco or nicotine product.

**Legal Standard**

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where parties file cross-motions for summary judgment, "each summary judgment motion must be evaluated independently to determine whether a genuine

dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The parties agree Missouri state law applies in interpreting the Policy. Under Missouri law, the interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). If the policy language is unambiguous, "the contract will be enforced as written." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (internal quotation marks omitted). But if the policy language is ambiguous, it will be construed against the insurer. *Id.* An ambiguity exists "if provisions of an insurance policy (when read in the context of the policy as a whole) are ambiguous, i.e., there is duplicity, indistinctness, or uncertainty in its meaning, and the policy is therefore open to different constructions." *Id.* When interpreting insurance policies, Missouri courts "appl[y] the meaning [that] would be attached [to the policy] by an ordinary person of average understanding if purchasing insurance." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (internal quotation marks omitted).

"An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc. 2017). "Such a request for a truncated consideration of portions of the policy is unavailing." *Id.* "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Id.* When determining whether an ambiguity exists, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Id.* And "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Id.*

## Discussion

The sole issue is whether the Policy provides coverage for Williams' alleged injuries. Scottsdale argues several exclusions preclude coverage. Williams argues the exclusions render the Policy illusory and ambiguous.

Here, the products-completed exclusion clearly precludes coverage, and no ambiguity exists. The exclusion precludes coverage for bodily injury occurring away from the premises

4

owned or rented by Aqueous Vapor and arising out of their product or work. (Doc. 15-3.) Thus, two requirements must be met for the exclusion to apply: the injuries occurred away from the premises and the injuries arose out of either Aqueous Vapor's product or work. Here, the injuries sustained by Williams occurred away from the premises owned by Aqueous Vapor. The first requirement is therefore satisfied. Next, the Policy defines "your product" as "[a]ny goods or products . . . sold, handled, distributed or disposed of by . . . [Aqueous Vapor]." (*Id.*) The injuries in this case were caused by an exploding battery sold by Aqueous Vapor to Williams. Thus, Williams' injuries arose out of "your product" as defined by the Policy. Accordingly, the products-completed exclusion precludes coverage for the bodily injuries Williams suffered.

Williams makes several arguments that interpreting the Policy in this way would render any coverage illusory. Williams' arguments are without merit. "The doctrine of illusory coverage applies only when part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *H & R Block, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 546 F.3d 937, 942 (8th Cir. 2008). Williams first argues the primary purpose of a Commercial General Liability policy is "to protect the insured against losses to third parties arising out of the operation of the insured's business." *Am. Family Mut. Ins. Co., S.I. v. Mid-Am. Grain Distributors, LLC*, 958 F.3d 748, 756 (8th Cir. 2020) (internal quotations omitted); *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc. 1998) ("[C]ourts have interpreted such policies as insuring the risk of the insured causing damage to other persons and their property."). However, "Missouri also recognizes that [Commercial General Liability policies] are not intended as a guarantee of the quality of an insured's product or work." *Id.* (internal quotations omitted). Because the injuries arose out of a defect in Aqueous Vapor's product, Williams' argument is unpersuasive.

Secondly, Williams argues that if the exclusions are read to exclude coverage, it would transform the policy into nothing more than a premises liability policy. However, Williams provides limited analysis as to why that would be the case, and the Court cannot determine on these facts that the Policy amounts to such. Additionally, "'[p]roducts-completed operations hazard' exclusions are common provisions in commercial general liability policies." *Cincinnati Ins. Co. v. Intek Corp.*, No. 4:08CV1440 JCH, 2010 WL 716197, at *4 (E.D. Mo. Feb. 24, 2010). In fact, the products-completed exclusion language at issue in *Cincinnati Ins. Co.* is identical to the products-completed language here. *Id.* There, the court found the products-completed

5

exclusion precluded coverage and that Missouri courts have routinely found exclusions with nearly identical language unambiguous. *Id.* Therefore, the Court finds the products-completed exclusion precludes coverage of Williams injuries, and Scottsdale's motion for summary judgment will be granted. Because the Court finds the products-completed exclusion precludes coverage, it declines to rule whether the other exclusions similarly precluded coverage.[3]

Finally, Williams argues that Scottsdale is required to defend the entirety of the state court petition in light of the Missouri Merchandising Practices Act ("MMPA") claim. Williams cites *American Family Mutual Insurance Company v. Sharon,* 596 S.W.3d 135, 144-145 (Mo. App. W.D. 2020). In *Sharon*, the court held that a claim under the MMPA can constitute an occurrence in an insurance policy, necessitating a duty to defend and indemnify. *Id.* However, *Sharon* is readily distinguishable from this case. The court in *Sharon* went on to find that American Family Mutual Insurance Company failed to meet its burden of showing the argued exclusions precluded coverage. *Id.* at 147-51. Here, on the other hand, Scottsdale has shown the products-completed exclusion bars coverage for the alleged injuries. Thus, even if the alleged negligent misrepresentations were an occurrence under the Policy, they would be excluded from coverage, meaning no duty to defend or indemnify exists for the injuries alleged.

## Conclusion

Accordingly, and after careful consideration, Scottdale's motion for summary judgment is **GRANTED**. Williams' motion for summary judgment is **DENIED**. Judgment will be entered in favor of Scottsdale and against Defendants with respect to Scottsdale's claim it has no duty to defend or indemnify Aqueous Vapor in the underlying suit. A separate judgment will accompany this Order.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 12, 2021

---

[3] The Court notes the Total Products Exclusion with Designated Premises contains similar language as the products-completed exclusion and would likely further preclude coverage. The Tobacco or Nicotine exclusion would raise several issues and is possibly void in the context of Aquoeous Vapor's business. However, even if that were the case, the remedy would be to void the exclusion, not the entire policy, meaning the other exclusions would still preclude coverage. "[Courts] do not throw the baby out with the bath water. A void part of a contract (absent elements of fraud) does not necessarily make the whole void." *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 337 (Mo. Ct. App. 2012) (cleaned up).